U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
OCT 0 1 2014
LAWRENCE K. BAERMAN, CLERK
ALBANY

United States District Court
for the
Northern District of New York

| | |
|---|---|
| In the matter of the arbitration between: | Arbitration No. |
| ROBERT AJAMIAN, | |
| Claimants, | 1:14-cv-1204 (DNH/CFH) |
| -vs- | |
| MORGAN STANLEY DEAN WITTER, INC., | |
| Respondent. | STATEMENT OF CLAIM |

Claimant, Robert Ajamian (" Mr. Ajamian" or the "Claimant"), by and through his undersigned counsel, Nicholas J. Guiliano, Esquire, 230 South Broad Street, Suite 601, Philadelphia, Pennsylvania 19102, for his Statement of Claim against the above captioned Respondent alleges the following:

### I. SUMMARY & OVERVIEW

1. Claimant brings this action for violation of the anti-fraud provisions of the federal securities laws, the sale of unsuitable securities, common law fraud, and breach of fiduciary duty Edward Dominguez in connection with his association with Respondent Morgan Stanley Dean Witter.

## II. THE PARTIES

2. Robert Ajamian is a public customer and is a resident of the State of New York.

3. At all times relevant hereto, Morgan Stanley Dean Witter ("MSDW") is registered broker-dealer with its principal place of business at 2000 Westchester Avenue, Purchase, New York 10577. At all times relevant hereto, MSDW operated a branch office at One Keycorp Plaza, Albany, New York 12207.

4. At all times relevant hereto, Edward Dominquez ("Dominguez") was a registered representative of MSDW operating from the Albany, New York office of MSDW. Prior to the initiation of this action, Dominguez has also been the subject of at least two (2) reported customer initiated investment related complaints or arbitrations alleging fraud in connection with the sale of securities.

5. At all times relevant hereto, MSDW was responsible for the supervision of Dominguez's sales practices, and the periodic inspection of customer accounts to reasonably detect and prevent fraud, unauthorized trading, and the sale of unsuitable securities to customers. As such, MSDW had the opportunity and ability to control the activities of Dominguez, and therefore is liable to Claimant under the common law doctrine of respondeat superior and as a "control person" pursuant to Section 20(a) of the Exchange Act of 1934, 15 U.S.C. §78(t).

## III. FACTUAL ALLEGATIONS

6. Robert Ajamian is 49 years old, and is self employed as a sales person of home use water purification equipment. He is also a highschool graduate, and has no prior investment experience of any kind.

2

7.  In 2000, Claimant's father died, and Claimant obtained his father's retirement account valued at approximately $92,000 and discussed the investment of these funds with Respondent MSDW through Dominguez.

8.  Dominguez held himself out as a trained and knowledgeable investment professional, and that with the resources of MSDW, Dominguez promised that he could safely and responsibly manage these funds. (Unbeknownst to Claimant, only three years earlier, Dominguez was unemployed and worked for a tank service in Hollywood, Florida).

9.  Claimant expressly represented that he had no prior investment experience and sought to safely invest these monies which had belonged to Claimant's father.

10. In response, Dominguez represented that he would manage Claimant's investments by investing in a diversified portfolio of government bonds and conservative mutual funds.

11. Based on these representations, in July 2000, Claimant deposited approximately 92,000 with Respondents.

12. Dominguez immediately invested a portion of these funds in three (3) "Class B," proprietary Morgan Stanley funds: The Morgan Stanley Aggressive Equity Funds, the Morgan Stanley Total Market Index Fund, and the Morgan Stanley American Opportunity Fund.[1]

---

[1] Mutual funds grant volume discounts on sales commissions charged to customers. The levels at which the discounts become effective are called "breakpoints," and can be reached in three ways: (1) in a single purchase; (2) over a 13-month period pursuant to a letter of intent; (3) and from the time of the initial purchase under rights of accumulation. *In re: Advest, Inc.*, SEC Release No. 34-24072, 1987 SEC LEXIS 2624 (February 9, 1987). For Class "B" purchases, however, there are no "breakpoints" or quantity and the broker obtains the full commission, payable in advance, irrespective of the amount invested by the customer. By purchasing Class "B" shares Respondents garnered commissions, that would had been substantially less had Claimant purchased Class "A" shares from the same fund family.

3

13. With the remaining funds, Dominguez purchased United States Treasury Securities, which less than three (3) months later were sold to purchase additional shares of the Morgan Stanley Technology Fund and shares of LSI Logic and Oracle Corp.[2]

14. When Claimant requested information regarding these transactions, Dominguez told Claimant that he and MSDW, as the investment banker for these companies, had special information and due diligence regarding these companies, and that the price of these securities were guarantied to increase in value.

15. Claimant, a novice investor, reasonably relied upon these representations.

16. Thereafter, as Claimant began to notice the value of his account declining, Dominguez explained that Claimant's losses were only temporary, and that Claimant would recover any losses.

---

[2] In addition, in connection with the sale of proprietary Morgan Stanley investment company shares to Claimant Dominguez received an enhanced pay-out as part an effort by Morgan Stanley to gather assets in proprietary funds. *See*, Commonwealth of Massachusetts, Office of the Secretary of the Commonwealth, Securities Division Docket No. E-2003-53 (incentive based compensation relating to the sale of proprietary investment company shares); New York Stock Exchange Division of Enforcement, No. 04-184 (Dec. 3, 2004)(failure to provide prospectuses in connection with the sale of proprietary mutual shares);, United States Securities & Exchange Commission File No. 3-11335 (Dec. 15, 2003)(consent to $25 million fine in connection with the sale of proprietary investment company shares); NASD Regulation, CAF03-0060 (Dec. 17, 2004)(supervision in connection with the sale of proprietary investment company shares); NASD Regulation, C10003-0077 (Sept. 15, 2003)(compensation in connection with the sale of proprietary investment company shares); United States Securities & Exchange Commission Rel. 34-43215 (Aug. 28, 2000)(supervision in connection with the sale of proprietary investment company shares); NASD Regulation, CAF04-0053 (July 16, 2004)(Discovery notification requirements and compliance).

17. Claimant's account never did recover, and as a direct and proximate result of the transactions effected by Dominguez, Claimant has suffered losses of approximately $45,000, exclusive of interest, costs and attorneys' fees.

## FIRST COUNT

18. Claimant incorporates the allegations set forth above in ¶¶ 1 through 17 inclusive, by reference.

19. Respondents concealed and made misrepresentations and omissions of material facts concerning the inherent risks of the speculative nature of the securities purchased in Claimant's securities account, upon which Claimant justifiably relied.

20. These misstatements and omissions of material fact, include:

a) Claimant's investment portfolio was substantially undiversified and presented a high degree of risk;

b) Dominguez's speculative purchases presented a high degree of risk;

c) Claimant could lose substantially his entire retirement account;

d) Dominguez was substantially untrained, lacked any special information or expertise, and that Dominguez's unsupervised activities were not supported by any research or other due diligence by MSDW or anyone else; and

e) MSDW had a proprietary interest in these securities, and had sold them to Claimant with substantial undisclosed profits;

21. In addition to the foregoing, Respondent knew, but concealed and failed to disclose to Claimant that by effecting transactions in, Morgan Stanley proprietary "Class B," mutual fund shares, Respondent MSDW and Dominguez had maximized their commissions and fees at

Claimant's expense.

22.   These misstatements and omissions of material fact made in connection with the sale of securities were effected with the intent of deceiving Claimant and constitute violations of § 10(b) of the Securities Act of 1934, and SEC Rule 10b-5, as promulgated thereunder.

23.   Through an ongoing course of fraudulent conduct, concealments, and false promises, Claimant was materially deceived.

24.   Dominguez's promise to recover Claimant's loses in subsequent transactions constitutes a deceptive and fraudulent practice in violation of NASD Conduct Rule IM-2310, and is actionable under §10(b) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 as promulgated thereunder.

25.   Claimant alleges that Respondent MSDW is responsible for Dominguez's actions and ongoing course of fraudulent conduct, under the common law doctrine of respondeat superior and as a "control person" pursuant to Section 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78t.

WHEREFORE, Claimant requests that an award be entered against MSDW for:

a)   compensatory damages of $45,000; + treble $125,000 [handwritten]

b)   lost income under the "well managed portfolio" theory of recovery;

c)   punitive damages in accordance with Rule 10330(e);

d)   interest;

e)   reasonable attorneys fees and cost of suit; and

f)   any other relief that is just, fair and equitable.

## SECOND COUNT

27. Claimant incorporates the allegations set forth above in ¶¶ 1 through 26 inclusive, by reference.

28. The sale of unsuitable securities is actionable under Section 10(b) of the Exchange Act, and Rule 10b-5, as promulgated thereunder.

29. NASD Conduct Rule IM-2310 with regard to suitability, specifically provides that:

> (a) In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.
>
> (b) Prior to the execution of a transaction recommended to a non-institutional customer, other than transactions with customers where investments are limited to money market mutual funds, a member shall make reasonable efforts to obtain information concerning:
>
> (1) the customer's financial status;
>
> (2) the customer's tax status;
>
> (3) the customer's investment objectives; and
>
> (4) such other information used or considered to be reasonable by such member or registered representative in making recommendations to the customer.

NASD Manual, NASD Conduct Rule IM-2310 at ¶ 4264 (CCH 1999)(emphasis added).

30. Respondents effected the sale of securities to Claimant for which he was unsuitable in light of his age, net worth, and stated investment objectives. Respondents effected these transactions with an intent to defraud and with a reckless disregard for the Claimant's interests in that Respondents knew or reasonably believed the transaction was unsuitable but effected it

7

anyway.

31. As a direct and proximate result of Respondent's sale of unsuitable securities to Claimant, Claimant has been damaged.

WHEREFORE, Claimant requests that an award be entered against MSDW for:

a) compensatory damages of $45,000; + treble $126,000

b) lost income under the "well managed portfolio" theory of recovery;

c) punitive damages in accordance with Rule 10330(e);

d) interest;

e) reasonable attorneys fees and cost of suit; and

f) any other relief that is just, fair and equitable.

### THIRD COUNT

32. Claimant incorporate the allegations set forth above in ¶¶ 1 through 31 inclusive, by reference.

33. Respondents Dominguez and MSDW held themselves out as having the knowledge, skill and expertise to render investment advice reasonably calculated to fulfill the investment objectives of their clients.

34. Claimant reasonably relied on the purported knowledge, skill and expertise of MSDW and Dominguez, unaware that less than three years ealier, Dominguez was unemployed and employed in the Tanker service business in Florida, and unaware that MSDW had imposed sales quotas on certain of its newer registered representatives and had undertaken a firm wide sales effort to gather assets in connection with the sale of MSDW proprietary products.

35. As a result of Respondents' breach of fiduciary duty, Claimant has been damaged.

WHEREFORE, Claimant requests that an award be entered against MSDW for:

a) compensatory damages of $45,000; + treble $126,000

b) lost income under the "well managed portfolio" theory of recovery;

c) punitive damages in accordance with Rule 10330(e);

d) interest;

e) reasonable attorneys fees and cost of suit; and

f) any other relief that is just, fair and equitable.

## FOURTH COUNT

36. Claimant incorporates the allegations set forth above in ¶¶ 1 through 35, inclusive, by reference.

37. Claimant asserts that Respondent MSDW has an affirmative duty to supervise the sales practices of its registered agents, including Dominguez, and to periodically inspect Claimant's securities account for evidence of, and to reasonably prevent, fraud, and the sale of unsuitable securities.

38. NASD Conduct Rule 3010, specifically provides that:

> Each member shall establish and maintain a system to supervise the activities of each registered representative and associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with the Rules of this Association. Final responsibility for proper supervision shall rest with the member.

39. Claimant alleges that had such a periodic inspection occurred, it would be reasonably apparent that Dominguez was engaged in unconscionable sales practices with respect to Claimant's securities account.

40. As a direct and proximate result of Respondent's negligent failure to supervise and outrageous course of conduct, Claimant has been damaged.

WHEREFORE, Claimant requests that an award be entered against Respondent MSDW for:

a) compensatory damages of $45,000; + treble $126,000

b) lost income under the "well managed portfolio" theory of recovery;

c) punitive damages in accordance with Rule 10330(e);

d) interest;

e) reasonable attorneys fees and cost of suit; and

f) any other relief that is just, fair and equitable.

### FIFTH COUNT

41. Claimant incorporates the allegations set forth above in ¶¶ 1 through 40, inclusive, by reference.

42. Claimant asserts that MSDW through Dominguez made willful and intentional misstatements and omissions of material fact with the intent of deceiving Claimant.

43. These misstatements and omissions of material fact include:

a) Claimant's account was undiversified;

b) Dominguez's purchases presented a high degree of risk;

c) Claimant could lose substantially his entire retirement account;

10

    d)    Dominguez was substantially untrained, lacked any special information or expertise, and that Dominguez's unsupervised activities were not supported by any research or other due diligence by MSDW or anyone else

44.   As a direct result of Respondents' common law fraud, and fraudulent course of conduct, Claimant has been damaged.

45.   Respondents' conduct was outrageous under the circumstances, and warrants the imposition of punitive damages.

WHEREFORE, Claimant requests that an award be entered jointly and severally against Respondents for:

    a)    compensatory damages of $45,000; + treble $126,000

    b)    lost income under the "well managed portfolio" theory of recovery;

    c)    punitive damages in accordance with Rule 10330(e);

    d)    interest;

    e)    reasonable attorneys fees and cost of suit; and

    f)    any other relief that is just, fair and equitable.

Sincerely,

*Robert H. S——*

9/30/2014

Robert H. Ajamian
30 Eberle Rd
Latham, NY 12110
518 928 6942





NASD
One Liberty Plaza, 27th Floor
165 Broadway
New York, NY
10006



4.    The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

**IN WITNESS WHEREOF**, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

November 15, 2005          By _/s/ Robert Ajamian_
                           Robert Ajamian

2